MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4203 (fax)
E-mail: michael@lozeaudrury.com
       doug@lozeaudrury.com

Attorneys for Plaintiff
GLOBAL COMMUNITY MONITOR

RUBEN A. CASTELLÓN (State Bar No. 154610)
Castellón & Funderburk LLP
3201 Danville Blvd., Suite 267
Alamo, CA 94507
Telephone: (925) 837-1199
Fax: (925) 837-1144
E-mail: rcastellon@candffirm.com

Attorneys for Defendant
MCWANE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL COMMUNITY MONITOR, a non-profit corporation, | Case No. 3:13-cv-02014-SC |
| Plaintiff, | **STIPULATION TO DISMISS WITH PREJUDICE PLAINTIFF'S CLAIMS; [~~PROPOSED~~] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]** |
| vs. | |
| MCWANE, INC., | |
| Defendant. | |

      WHEREAS, on February 8, 2013, Plaintiff Global Community Monitor ("GCM") provided

Defendant McWane, Inc. ("McWane") with a Notice of Violations and Intent to File Suit ("Notice")

under Clean Water Act § 505, 33 U.S.C. § 1365.

      WHEREAS, on May 1, 2013, GCM filed its Complaint against McWane in this Court,

*Global Community Monitor v. McWane, Inc.,* Case No. 3:13-cv-02014-SC.  Said Complaint incorporates by reference all of the allegations contained in GCM's Notice.

WHEREAS, GCM and McWane, through their authorized representatives and without either adjudication of GCM's claims or admission by McWane of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of GCM as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without the attached exhibits, entered into by and between GCM and McWane is attached hereto as Exhibit 1 and incorporated by reference.

WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review period set forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted correspondence to the Court indicating that they have no objection to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that GCM's claims, as set forth in the Notice and Complaint, be dismissed with prejudice. The parties respectfully request an order from this Court dismissing such claims with prejudice.  In accordance with paragraph 2 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the parties through December 16, 2016, for the sole purpose of resolving any disputes between the parties with respect to any provision of the Settlement Agreement, including enforcement of the Agreement.


Dated: March 3, 2014          Respectfully submitted,

                                        LOZEAU DRURY LLP


                    By:     /s/ *Douglas J. Chermak*
                            Douglas J. Chermak
                            Attorneys for Plaintiff Global Community Monitor

CASTELLON & FUNDERBURK LLP

By:     _/s/ Ruben A. Castellon_ (as authorized on 2/28/14) __
        Ruben A. Castellon
        Attorney for Defendant
        McWane, Inc.

[~~PROPOSED~~] ORDER

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff Global Community Monitor's claims against Defendant McWane, Inc., as set forth in the Notice and Complaint filed in Case No. 3:13-cv-02014-SC, are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 16, 2016, for the sole purpose of resolving any disputes between the parties with respect to any provision of the Settlement Agreement, including enforcing compliance by the parties of the terms of the Settlement Agreement , attached to the parties' Stipulation to Dismiss as Exhibit 1.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated:   ___03/05__ , 2014



_____
Judge Samuel Conti
United Sta

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the Global Community Monitor ("GCM") and McWane, Inc. ("McWane") that owns and operates AB&I located at 7825 San Leandro Street in Oakland, California (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, GCM is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of waters of the State of California, including waters adjacent to urbanized areas of the San Francisco Bay;

**WHEREAS**, McWane is a corporation organized under the laws of Delaware, which owns and operates an industrial facility, AB&I, a division of McWane Inc., located at 7825 San Leandro Street in Oakland, California (the "Facility") that discharges storm water associated with industrial activity pursuant to State Water Resources Control Board (hereinafter, the "SWRCB") Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "current applicable General Permit").  A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about February 8, 2013, GCM provided McWane with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on May 1, 2013, GCM filed its Complaint in the United States District Court for the Northern District of California (*Global Community Monitor v. McWane, Inc.*, Case No. 4:13-cv-02014-DMR).  A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, McWane denies any and all of GCM's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, GCM and McWane, through their authorized representatives and without either adjudication of GCM's claims or admission by McWane of any alleged violation or other wrongdoing, have chosen to resolve in full GCM's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, GCM and McWane have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving GCM's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, GCM and McWane hereby agree as follows:

<u>**EFFECTIVE DATE**</u>

1.      The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

<u>**COMMITMENTS OF GCM**</u>

2.      **Stipulation to Dismiss With Prejudice and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 17 below, GCM shall file a Stipulation to Dismiss With Prejudice and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that GCM is dismissing with prejudice all claims in GCM's Complaint. Consistent with Paragraphs 23 and 24 herein, the Stipulation to Dismiss With Prejudice and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 16, 2016, or through the conclusion of any proceeding to enforce this AGREEMENT, for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

2

## COMMITMENTS OF MCWANE

3.       **Compliance with General Permit.**  McWane agrees to continue to operate the Facility in compliance with the applicable requirements of the applicable General Permit, as adopted by the California SWRCB, and Clean Water Act.

4.       **Implemented Storm Water Controls**.  McWane agrees that the Facility shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5.       **Additional Structural Best Management Practices.**  McWane shall implement the following structural best management practices ("BMPs") to improve the storm water pollution prevention measures at the drop inlets, outfalls, and other industrial areas at the Facility by the times indicated:

      a.       **Stormwater Treatment System**

            i.   By December 1, 2013, McWane shall select a new storm water treatment system ("treatment system") for the Facility.  The treatment system shall be manufactured by either H20 Stormwater Systems, or StormwateRx.  The system shall be designed to treat and discharge combined storm water at the Facility at a rate of not less than 0.2 inches/hour.  McWane shall incorporate sufficient pumps, pipes, and other conveyance structures to ensure that all runoff from storm water equal to a rainfall rate of 0.2 inches/hour from the industrial areas of the Facility are routed to the treatment system prior to discharge to the City of Oakland municipal storm sewer system.  The treatment system shall include properly sized plumbing and treatment equipment to ensure that runoff generated from storm water falling on the industrial areas of the Facility at a rate equal to 0.2 inches/hour will be treated prior to discharge at Outfall 1 shown on Exhibit A.

3

ii. By December 13, 2013, McWane shall send GCM a report describing the treatment system it has selected.  This report shall include a detailed description of the treatment system, spec sheets for all of the components of the system, and a map depicting the changes that will be made at the Facility.  If requested by GCM within thirty (30) days of receipt of such report, GCM and McWane shall meet and confer to discuss the contents of the report and the adequacy of the proposed treatment system.

iii. By January 10, 2014, McWane shall modify the plumbing for the Facility in Drainage Areas serving Outfall 2 and Outfall 3/5 to combine all runoff generated from storm water falling in those drainage areas at a rate equal to, or below 0.2 inches/hour to Outfall 1, as shown on Exhibit A.

iv. By January 10, 2014, McWane shall modify the Team Member Parking area of the Facility draining into Outfall 4 to assure that the area is free from industrial use, and that all storm water runoff in that area be directly discharged to the City of Oakland municipal storm water system.

v. By August 1, 2014, McWane shall modify the plumbing for the Facility in Drainage Areas serving Outfalls 6, 7, and 8, to combine all runoff generated from storm water falling in those drainage areas at a rate equal to, or below 0.2 inches per hour to Outfall 1 for treatment.

vi. By October 1, 2014, McWane shall install the treatment system at the Facility.

vii. By October 15, 2014, McWane shall send GCM digital photos confirming the installation of the treatment system.

b.      **Interim BMPs**

      i.   By January 10, 2014, shall install a berm in the corner of the Facility west of Gate 3.  This berm shall ensure that no industrial storm water will be discharged from the Facility onto 76th Avenue and/or San Leandro Street.  Within seven (7) days of the installation of the berm, McWane shall send GCM digital photographs confirming the installation.

      ii.   By January 14, 2014, McWane shall enhance the media in the Aquip storm water treatment system in order to maximize treatment at the existing unit processes.

      iii.   By January 10, 2014, McWane shall use a tarp or tarps to cover materials (not covered by a roof) stored by the gate at San Leandro and 76th Street (northern corner of the Facility).

6.      **Monitoring**.  McWane agrees to perform the monitoring described herein during the 2013-2014, 2014-2015, and 2015-2016 wet seasons.

a.      During the 2013-2014 wet season, McWane shall sample and analyze storm water discharges from four (4) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the current applicable General Permit, to the extent that four (4) qualifying storm events occur during each wet season.  If McWane has not sampled four (4) qualifying storm events by March 1 of the wet season, then it shall sample up to three (3) storm events that results in any discharges during normal operating hours, regardless of whether they are qualifying storm events.  McWane shall sample and analyze discharges from Outfalls 1, 2, 3, 5, 6, 7, and 8.

b.      During the 2014-2015 and 2015-2016 wet seasons, McWane shall sample and analyze storm water discharges from four (4) qualifying storm events that result in discharge at Outfall 1 consistent with the requirements and

protocols set forth in the applicable General Permit, to the extent that four (4) qualifying storm events occur during each wet season.  If McWane has not sampled four (4) qualifying storm events by March 1 of the wet season, then it shall sample up to four (4) storm events that results in any discharges during normal operating hours, regardless of whether they are qualifying storm events.

c.      During the 2014-2015 and 2015-2016 wet seasons, in the event of a discharge occurring from storms falling at a rate greater than 0.2 inches per hour at Outfalls 1, 2 or 3, or in the event of a bypass for safety reasons at any Outfall, storm water shall be sampled, to the extent feasible during normal working hours, consistent with the applicable General Permit. However, after the second set of bypass samples are taken, if determined to be representative, no further samples will be taken.

d.      McWane shall analyze each storm water sample taken in accordance with the applicable General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease, aluminum, copper, iron, and zinc.

e.      During the 2013-2014 wet season, McWane shall conduct monthly visual observations of its discharge locations for at least one qualifying rain event per month that results in any discharge from the Facility.

f.      All maintenance, repair, and replacement activities relating to the Facility's storm water management program shall be recorded and described on appropriate log books or sheets.  Such logs shall include, but not be limited to, filter repairs and replacements.  Sample log sheets shall be included in the Facility's SWPPP.  Completed logs for each wet season shall be maintained with the Facility's SWPPP and available for review upon request.

7. **Monitoring Results.**  Results from the sampling and analysis at the Facility during the term of this AGREEMENT shall be provided to GCM within 30 days of receipt of the sampling results by McWane or its counsel.

8. **Action Plan Regarding Exceedance of Levels of Concern.**

   a. For the purpose of sampling under this Agreement, the following levels of concern are established –  Total Suspended Solids: 100 mg/L; pH: 6.0-9.0 s.u.; Oil & Grease: 15 mg/L; Aluminum: 0.75 mg/L; Copper: 0.0332 mg/L; Iron: 1.0 mg/L; and Zinc: 0.262 mg/L.

   b. If any particular level of concern is exceeded in any sampling events in the 2014-2015 or 2015-2016 wet season, McWane shall prepare an Action Plan discussing:
       i. Any exceedance or exceedances;
      ii. An explanation of the possible cause(s) and/or source(s) of any exceedance;
     iii. Responsive actions to improve its storm water management practices;
      iv. Modified BMPS, or to the extent applicable, additional feasible BMPs,  to be considered to further reduce the possibility of future exceedance(s), and
       v. A discussion of Compliance or Non-Compliance with the applicable General permit.

Such Action Plan shall be e-mailed to GCM not later than July 30th following the conclusion of each wet season.

9. Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than the start of the subsequent wet season, except where the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to

effectively meet and confer in accordance with Paragraph 10.  Within thirty (30) days of implementation, McWane's SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

10.      Upon receipt of the Memorandum, GCM may review and comment on any additional measures.  If requested by GCM within twenty-one (21) days of receipt of such Memorandum, GCM and McWane shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Levels of Concern.  If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Judge assigned to this action pursuant to Paragraphs 23 and 24 below.  If the SETTLING PARTIES fail to reach agreement at the settlement conference, the SETTLING PARTIES may agree to submit the dispute via motion to the District Court consistent with Paragraphs 23 and 24 below.  If GCM does not request a meet and confer regarding the Memorandum within twenty-one (21) days of receipt of such Memorandum provided for in this paragraph, GCM shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

11.      Any concurrence or failure to object by GCM with regard to the reasonableness of any additional measures required by this AGREEMENT or implemented by McWane shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria.

12.      In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, McWane shall permit representatives of GCM to perform one (1) additional site visit to the Facility per year during normal daylight business hours during the term of this AGREEMENT, provided that GCM provides McWane via e-mail with at least one week prior written notice except that McWane shall have the right to deny access if circumstances would make the inspection burdensome for any party/attorney and/or  cause disruption with  the Facility's operations.  In such case, McWane shall specify at least three (3)

dates within the next three (3) weeks thereafter upon which a site inspection by GCM may proceed.  If GCM takes photographs and/or video recording, GCM shall provide McWane with the photographs and/or video within fourteen (14) days after the site visit.  GCM agrees that all individuals who will participate in a site inspection pursuant to this AGREEMENT will execute a waiver and release prior to the site inspection.  GCM also agrees that all individuals who will participate in the inspection will sign a sign-in sheet when they arrive at the Facility.

13.     **Provision of Documents and Reports.**  During the life of this AGREEMENT, McWane shall provide GCM with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the applicable General Permit.  Such documents and reports shall be mailed, e-mailed, or otherwise provided in electronic format to GCM contemporaneously with submission to such agency.  Within ten business (10) days of a written request (via e-mail or regular mail) by GCM, McWane also shall provide GCM a copy of all documents referenced in this AGREEMENT from the year prior to the request, including but not limited to logs or laboratory sample reports.

14.     **Amendment of SWPPP.**  Within sixty (60) days of the Effective Date of this AGREEMENT, McWane shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT.  McWane shall ensure that all maps, tables, and text comply with the requirements of the General Permit.  McWane shall ensure that the SWPPP describes all structural and non-structural BMPs, details the measures to be installed, and discusses why such BMPs will be effective in addressing the pollutant sources at the Facility.  A copy of the amended SWPPP shall be provided to GCM within thirty (30) days of completion.

15.     **Mitigation Payment**.  In recognition of the good faith efforts by McWane to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by McWane of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to McWane, the SETTLING PARTIES agree that McWane will pay the sum of forty-eight thousand ($48,000) to the Rose Foundation for

9

Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects in San Francisco Bay watershed.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 1970 Broadway, Suite 600, Oakland, CA 94607, Attn: Tim Little.  Payment shall be made by McWane to the Rose Foundation within forty five (45) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  McWane shall copy GCM with any correspondence and a copy of the check sent to the Rose Foundation.  The Rose Foundation shall provide notice to the SETTLING PARTIES within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

16.     **Fees, Costs, Expenses, and Oversight**.  As reimbursement for GCM's investigative, expert and attorneys' fees and costs, and oversight monitoring of McWane's compliance with this AGREEMENT, McWane shall pay GCM the sum of forty seven thousand ($47,000).  Payment shall be made by McWane within forty five (45) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by McWane to GCM shall be made in the form of a single check payable to "Lozeau Drury LLP", and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs, and oversight costs incurred by GCM that have or could have been claimed in connection with GCM's claims, up to and including the Effective Date of this AGREEMENT.

17.     **Review by Federal Agencies.**  GCM shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to McWane upon receipt by GCM.  In the event that the Agencies comment negatively on the provisions of this AGREEMENT, GCM and McWane agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If GCM and McWane are unable to resolve any issue(s) raised by the Agencies in their comments, GCM and McWane

agree to expeditiously seek a settlement conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

18.     The SETTLING PARTIES enter into this AGREEMENT for the purpose of avoiding prolonged and costly litigation.  Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of any fact, finding, issue of law, or violation of any law, rule or regulation, nor shall compliance with this AGREEMENT constitute or be construed as an admission by McWane of any fact, finding conclusion, issue of law, or violation of law.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

19.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and agents and all persons, firms, and corporations having an interest in them, and current and former employees, attorneys, officers, directors, and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from GCM's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for alleged General Permit violations, alleged Clean Water Act violations, and for alleged storm water pollution discharges at the Facility up to and including the Termination Date of this AGREEMENT.

20.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims pertaining to the Facility as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21.     For the period beginning on the Effective Date and ending on December 16, 2016, GCM agrees that neither GCM, its officers, executive staff, members of its governing board nor any organization under the control of GCM, its officers, executive staff, or members of its governing board, will file any lawsuit against McWane seeking relief for alleged violations of the Clean Water Act or violations of the General Permit at its facility located at 7825 San Leandro Street in Oakland.  GCM further agrees that, beginning on the Effective Date and ending on December 16, 2016, GCM will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against the McWane facility located at 7825 San Leandro Street in Oakland that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the Facility's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

22.     This AGREEMENT shall terminate on December 16, 2016.

## DISPUTE RESOLUTION PROCEDURES

23.     Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure.  The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT.  In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Judge assigned to this action.  In the event that the SETTLING PARTIES cannot resolve the dispute by

the conclusion of the settlement meeting with the Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

24.     In resolving any dispute arising from this AGREEMENT, the Court shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, or any other legal authority, and applicable case law interpreting such provisions shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court.  The SETTLING PARTIES agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

**BREACH OF SETTLEMENT AGREEMENT**

25.     **Impossibility of Performance.**  Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within twenty-one (21) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance.  The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established.  In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

**GENERAL PROVISIONS**

26.     **Construction.**  The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

27.     **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

13

28.    **Severability.**  In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

29.    **Correspondence.**  All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, overnight mail, or e-mail as follows:

<u>If to GCM:</u>

Denny Larson
Global Community Monitor
P.O. Box 1784
El Cerrito, CA 94530
denny@gcmonitor.org

And to:

Douglas J. Chermak
Michael R. Lozeau
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel:  (510) 836-4200
doug@lozeaudrury.com
michael@lozeaudrury.com

<u>If to McWane</u>:

Kurt Winter
7825 San Leandro Street
Oakland, CA  94621
Kurt.Winter@abifoundry.com

And to:

Ruben A. Castellón
Castellón & Funderburk LLP
3201 Danville Boulevard, Suite 267
Alamo, CA 94507
rcastellon@candffirm.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

30.     **Counterparts.**  This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

31.     **Assignment**.  Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

32.     **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

33.     **Full Settlement.**  This AGREEMENT constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

34.     **Integration Clause.**  This is an integrated AGREEMENT.  This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

///

///

///

///

///

15

35.    **Authority.**  The undersigned representatives for GCM and McWane each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: _12 - 29_, 2013          MCWANE, INC.

By: Kurt Winter
Title:   General Manager

Date:_____, 2013          GLOBAL COMMUNIY MONITOR

By:    Denny Larson
Title:    Executive Director

**APPROVED AS TO FORM:**

For DEFENDANT

Date: _1 - 7_, ~~2013~~ 2014          CASTELLÓN & FUNDERBURK LLP

By:    Ruben A. Castellón, Esq.

For PLAINTIFF

Date: _____, 2013          LOZEAU DRURY LLP

By:    Douglas J. Chermak, Esq.

16

35.     **Authority.**  The undersigned representatives for GCM and McWane each certify
that he/she is fully authorized by the party whom he/she represents to enter into the terms and
conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: _____, 2014                MCWANE, INC.

                                            _____
                                            By:    Kurt Winter
                                            Title:  General Manager

Date: January 7 _____, 2014                GLOBAL COMMUNIY MONITOR

                                            _____
                                            By:    Denny Larson
                                            Title:   Executive Director

**APPROVED AS TO FORM**:

                                            For DEFENDANT

Date: _____, 2014                CASTELLÓN & FUNDERBURK LLP

                                            _____
                                            By:    Ruben A. Castellón, Esq.

                                            For PLAINTIFF

Date: Jan. 8 ____, 2014                     LOZEAU DRURY LLP

                                            _____
                                            By:    Douglas J. Chermak, Esq.